UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

NIPPON YUSEN KAISHA A.K.A. NYK LINE    :

                                       :        OPINION AND ORDER

                     Plaintiff,

                                       :

     -v.-                                        12 Civ. 6643 (GWG)

                                       :

FIL LINES USA INC.,                    :

                     Defendant.        :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

    Plaintiff Nippon Yusen Kaisha, a.k.a. NYK Line ("Nippon" or "NYK"), brought this

action against defendant FIL Lines USA Inc. ("FIL") to recover freight charges incurred in the

transport of cargo from ports in India to Los Angeles and New York.  Nippon now moves for

summary judgment against FIL.[1]  Nippon also seeks entry of a final judgment under Rule 54(b)

of the Federal Rules of Civil Procedure.  The parties have consented to having this matter

_____

    [1]See Plaintiff's Notice of Motion for Summary Judgment and for Entry of Final
Judgment Under Federal Rule of Civil Procedure 54(b), filed June 6, 2013 (Docket # 12);
Declaration of Ron Bertot in Support of Motion for Summary Judgment, filed June 6, 2013
(Docket # 13) ("Bertot Decl."); Declaration of Joseph De May, Jr. in Support of Motion for
Summary Judgment, filed June 6, 2013 (Docket # 14); Memorandum of Law in Support of
Motion for Summary Judgment, filed June 6, 2013 (Docket # 15) ("Pl. Mem."); Plaintiff's Rule
56.1 Statement in Support of Motion for Summary Judgment, filed June 6, 2013 (Docket # 17)
("Pl. 56.1 Stat."); Declaration of Ramesh Krishnan in Opposition to Motion for Summary
Judgment, filed July 22, 2013 (Docket # 21) ("Krishnan Decl."); Defendant's Rule 56.1
Statement in Opposition to Motion for Summary Judgment, filed July 22, 2013 (Docket # 22)
("Def. 56.1 Stat."); Memorandum of Law in Opposition to Motion for Summary Judgment, filed
July 22, 2013 (Docket # 23) ("Def. Mem."); Reply Declaration of Ron Bertot in Support of
Motion for Summary Judgment, filed Aug. 19, 2013 (Docket # 24) ("Bertot Reply Decl.");
Reply Memorandum of Law in Support of Motion for Summary Judgment, filed Aug. 19, 2013
(Docket # 26); Reply Affirmation of Joseph De May in Support of Motion for Summary
Judgment, filed Aug. 19, 2013 (Docket # 27) ("De May Reply Decl.").

decided by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

I.  BACKGROUND

    A.  Procedural History

    Nippon filed the original complaint in this action on August 30, 2012.  See Complaint, filed Aug. 30, 2012 (Docket # 1) ("Compl.").  After FIL answered, it filed a third-party complaint against LCL Shipping Services Pvt. Ltd. ("LCL") and Freight India Logistics Pvt. Ltd. ("Freight India"), both of which FIL alleges are liable in indemnity and/or contribution for the amounts Nippon seeks.  See Third Party Complaint Pursuant to Rule 14(c), filed March 29, 2013 (Docket # 8) ("Third Party Compl.").  To date, no affidavit of service has been filed as to either third-party defendant.  Shortly after moving for summary judgment, Nippon filed an amended complaint that alleged additional charges that had accrued against FIL.  See First Amended Complaint, filed June 11, 2013 (Docket # 18) ("Am. Compl.").

    B.  Facts

    The following facts are undisputed unless otherwise stated.

    Nippon is an "an ocean common carrier of goods in the foreign commerce of the United States" and is licensed by the Federal Maritime Commission.  Am. Compl. ¶ 2.  FIL is a non-vessel operating common carrier and is also licensed by the Federal Maritime Commission.  Def. 56.1 Stat. ¶ 6.  There are 24 bills of lading at issue, which reflect the carriage of goods between ports in India and either Los Angeles or New York.  See Bills of Lading (annexed as Ex. D to Bertot Decl.).[2]  On each of the bills of lading, FIL's name is listed in the spaces labeled

---

    [2]A bill of lading is "a document normally issued by the shipowner when goods are loaded on its ship, and may, depending on the circumstances, serve as a receipt, a document of title, a contract for the carriage of goods, or all of the above."  Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 823 (2d Cir. 2004) (citation omitted).

"Consignee."  Id.  FIL also appears in the space labeled "Notify Party."  Id.  In the space labeled "Shipper/Exporter," the name of either LCL or Freight India appears.  Id.

Clause 23(6) on the reverse side of the bill of lading reads: "The parties defined herein as the Merchant shall be jointly and severally liable to the Carrier for payment of all freight and charges and for the performance of the obligation of each of them thereunder."  See Reverse Side Terms and Conditions, (annexed as Ex. F to Bertot Decl.), Clause 23(6).  The "Definition" section on the reverse side defines "Merchant" as "the Shipper, consignor, consignee, owner and receiver of the Goods, and the holder of this Bill and any other person acting on their behalf."  Id., Clause 1.

Nippon sent FIL 24 invoices for shipping charges based on the bills of lading.  See Invoices (annexed as Ex. E to Bertot Decl.).  None of these invoices contain the names of LCL or Freight India.  Each invoice contains a bill of lading number that matches one of the bills of lading.  See Invoices (annexed as Ex. E to Bertot Decl.); Bertot Decl. ¶ 6.  FIL's name is listed in these invoices in the space labeled "Invoice To."  Id.  The invoices were sent to FIL by email.  Id.  FIL paid $1,499.00 toward one of the invoices.  Id. ¶ 15; Schedule of Charges (affixed as Ex. C to Bertot Decl.).  Nippon has "no record that [FIL] ever disputed the amounts due."  Id. ¶ 11.  "Rather, it pleaded cash flow problems and asked for additional time to pay . . . ."  Id.  $66,750.02 remains due to Nippon for the shipments.  See Schedule of Charges (affixed as Ex. C to Bertot Decl.).  FIL's managing director, Ramesh Krishnan, states that any payments were made "as agent for and on behalf of the shippers, LCL and [India] Freight."  Krishnan Decl. ¶ 15.

FIL did not take actual delivery of any of the materials shipped and assumes they were accepted by the "ultimate consignees," Krishnan Decl. ¶ 14 — that is, LCL and India Freight.

FIL states that "NYK was aware at all material times that FIL was not the receiver or the ultimate consignee of any of the goods." Id. ¶ 13.  Krishnan also states that Nippon was aware that FIL was "only a nominal consignee and notify party on behalf of LCL and [India] Freight . . . ." Id. ¶ 13.  The basis for Krishnan's statements is the fact that the "ship to" and "customer" boxes entered on NYK's invoices contain the phrase "DO NOT USE Fil Lines USA." Id.; see also Invoices (affixed as Ex. E to Bertot Decl.).

## II.  SUBJECT MATTER JURISDICTION

28 U.S.C. § 1333(1) provides original and exclusive federal court jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction."  To ascertain whether a contract comes within maritime jurisdiction, courts look at the "nature and character of the contract" and ask "whether it has reference to maritime service or maritime transactions."  Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 24 (2004) (citations omitted).  A contract is maritime in nature when its "primary objective is to accomplish the transportation of goods by sea" from a foreign port to a port in the United States.  Id.  Here, the relevant contracts — Nippon's bills of lading — govern shipments of cargo from India to Los Angeles and New York.  Thus, they are maritime in nature and Nippon has properly invoked this Court's subject matter jurisdiction.  See, e.g., Thypin Steel Co. v. Asoma Corp., 215 F.3d 273, 277 (2d Cir. 2000) ("A bill of lading for ocean carriage is a maritime contract."); Korea Exp. USA, Inc. v. K.K.D. Imp., Inc., 103 F. Supp. 2d 682, 686 (S.D.N.Y. 2000) (finding maritime jurisdiction over suit for unpaid freight charges based on bills of lading).

## III.  LAW APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (citation omitted) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998) (citations omitted).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," Anderson, 477 U.S. at 256, and "[a] party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory." Major League Baseball Prop., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (citation omitted).  Where it is clear that no rational finder of fact "could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment should be granted." FDIC v. Great American Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir.1994)).

IV.  <u>DISCUSSION</u>

Nippon argues that because FIL was named as the "consignee" on the bills of lading at issue, and because the bills of lading provide that a "consignee" is liable for the payments due to Nippon, FIL owes Nippon for the unpaid freight charges based on the bills of lading.  <u>See</u> Pl. Mem. at 2-4.  In opposition, FIL does not dispute that the terms contained in the bills of lading cited by Nippon render it liable.  Instead, it argues that notwithstanding these terms, it was acting as an agent for disclosed principals — that is, LCL and India Freight.  Def. Mem. at 6-7. Because "an agent is not liable for the contractual obligations of a disclosed principal," FIL argues, it is not liable to Nippon for the amounts due under the bills of lading.  <u>Id.</u> at 6.

A.  <u>Law Applicable to Maritime Contracts</u>

Where a dispute over a maritime contract is not "inherently local," federal law controls the contract's interpretation.  <u>Norfolk</u>, 543 U.S. at 22-23 (citing <u>Kossick v. United Fruit Co.</u>, 365 U.S. 731, 735 (1961)); <u>ProShipLine, Inc. v. Aspen Infrastructures, Ltd.</u>, 585 F.3d 105, 110 (2d Cir. 2009).  Here, the dispute is not "inherently local" because it concerns shipments of goods from India to Los Angeles and New York.  <u>See</u>, <u>e.g.</u>, <u>APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc.</u>, 890 F. Supp. 2d 360, 366 (S.D.N.Y. 2012) (applying federal common law to dispute concerning shipments by sea from Taiwan to United States).  Federal courts apply "ordinary principles of maritime contract law" to disputes involving maritime contracts, including bills of lading.  <u>Asoma Corp.</u>, 467 F.3d at 823 (citing <u>Battery S.S. Corp. v. Refineria Pan., S.A.</u>, 513 F.2d 735, 738 (2d Cir. 1975)).  The Supreme Court has stated that absent a relevant statute, the "general maritime law, as developed by the judiciary, applies," and has characterized general maritime law as "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."  <u>East River S.S. Corp. v. Transamerica</u>

Delaval, Inc., 476 U.S. 858, 864-865 (1986). Under federal common law, "contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties." Norfolk, 543 U.S. at 31; see also APL Co., 890 F. Supp. 2d at 366 (applying "common law principles of contract formation and interpretation"); In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d 56, 71 (S.D.N.Y. 2009) (same). Because we are aware of no federal statute that would govern the interpretation of the bills of lading at issue in this case, we will look to common-law principles of contract interpretation, and will occasionally cite to New York case law to the extent it elucidates such common-law principles. See generally Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 256 (2d Cir. 2004) ("In developing federal common law in an area, [we] may look to state law . . . .")

B. Liability of FIL

Where the interpretation of a contract is at issue, "a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning." Am. Home. Assur. Co. v. Hapag Loyd Container Linie, GmbH, 446 F.3d 313, 316 (2d Cir. 2006) (citing Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993)). Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Id. (citation and quotation marks omitted). When interpreting a contract, "words and phrases . . . should be given their plain meaning . . . ." LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (citation omitted).

As already noted, the bills of lading identify FIL as "consignee," see Bills of Lading

7

(annexed as Ex. D to Bertot Decl.), and the terms on the reverse side of the bills state that all parties listed as "merchant" — of which "consignee" is one — are "jointly and severally liable to [Nippon] for the payment of all freight and charges and for the performance of the obligation of each of them hereunder," see Reverse Side Terms and Conditions (annexed as Ex. F to Bertot Decl.), Clause 23(6). These terms, taken together, convey a clear and definite meaning, and are not reasonably susceptible of competing interpretations. Thus, the language of the contractual provisions is clear and unambiguous.

FIL's only argument that addresses the text of the bills of lading is based on the fact that the bills contain the phrase "OCEAN FREIGHT COLLECT" on a line near the end of the bill. See Bills of Lading (annexed as Ex. D to Bertot Decl.). Krishnan, asserts that "collect" means that "all freight and other charges were supposed to have been paid by the ultimate consignee and cargo receiver at the time of delivery." Krishnan Decl. ¶ 12. Krishnan provides no basis for his statement, however, and there is no evidence that his view of the term "collect" is generally understood to have this meaning in the shipping industry. Employing its ordinary meaning, the phrase "ocean freight collect," used a single time and without context at the end of the bill, is not sufficient to render the bill of lading ambiguous in light of the detailed and unambiguous provisions making the consignee liable. Moreover, the term "collect" in common parlance means that the person receiving the goods is responsible for the charges. See, e.g., Merriam Webster's Collegiate Dictionary (10th ed. 2000) ("collect" defined as "to be paid for by the receiver"). Inasmuch as FIL was designated as "consignee," the use of the word "collect" does not alter the common sense understanding of the provisions of the bill of lading making the consignee liable for freight charges.

FIL's main argument, however, is not based on the text of the bills of lading. That is, it

does not argue that the bills are ambiguous.  Instead, FIL contends that, notwithstanding the

plain language of the bills of lading, FIL merely "acted as local agent for LCL and [India]

Freight, as disclosed principals, in connection with [Nippon's] bills of lading . . . ."  Def. Mem.

at 6.  It is true that "[c]ommon law principles of agency apply to maritime contracts," Fireman's

Fund McMgee Marine v. M/V CAROLINE,  2004 WL 287663, at *2 (S.D.N.Y. Feb. 11, 2004)

(citation omitted), and that "[w]hen an agent makes a contract for a disclosed principal, it

becomes neither a party to the contract nor liable for the performance of the contract."  Seguros

Banvenez, S.A. v. S/S Oliver Drescher, 761 F.2d 855, 860 (2d Cir. 1985) (citing Restatement

(Second) of Agency §§ 320, 328); accord Leather's Best, Inc. v. S.S. Mormaclynx, 451 F.2d 800,

808 (2d Cir. 1971); CMA-CGM (Canada), Inc. v. World Shippers Consultants, Ltd., 921 F.

Supp. 2d 1, 6 (E.D.N.Y. 2013).  This argument, however, begs the question of whether FIL, in

fact, entered into the contract on behalf of a disclosed principle.

Importantly, under the common law, "the party asserting that a relationship of agency

exists generally has the burden in litigation of establishing its existence."  Restatement (Third) of

Agency § 1.02 cmt. d; accord Courthouse Corp. Ctr. LLC v. Schulman, 74 A.D.3d 725, 727 (2d

Dep't 2010)  ("The defense of agency in avoidance of contractual liability is an affirmative

defense and the burden of establishing the disclosure of the agency relationship and the

corporate existence and identity of the principle is upon he who asserts an agency relationship.")

(citation and internal quotation marks omitted); Ads Plus Adver., Inc. v. Ault, 928 F. Supp. 2d

683, 690-91 (W.D.N.Y. 2013).  The opposing party must have "notice" that the purported agent

was acting for a principal.  Restatement (Third) of Agency § 1.04(2)(a).  "The fact that the agent

did not intend to bind herself cannot insulate her from liability unless there was an actual

disclosure of the agency . . . ."  Judith Garden, Inc. v. Mapel, 73 Misc.2d 810, 811-812 (N.Y.

City Civ. Ct. 1973).  To meet its burden, "generally, the self-serving statements of the purported agent are insufficient."  La Societe Nationale Pour La Recherche, La Production, Le Transport, La Transformation et la Commercialisation Des Hydrocarbures v. Shaheen Natural Res. Co., Inc., 585 F. Supp. 57, 62 (S.D.N.Y. 1983) (citations omitted).  Indeed, "[i]f the fact of agency does not appear in an integrated contract, an agent who appears to be a party thereto can not introduce extrinsic evidence to show that he is not a party . . . ."  Restatement (Second) of Contracts § 323(3).[3]

In this case, while LCL and Freight India are identified as "forwarding agents," the "fact of [FIL's] agency" does not appear anywhere in the bills of lading.  That is, the language of the contract does not in any way suggest that FIL was acting merely as an agent with respect to the contract for shipment.  This case is thus easily distinguishable from cases where the contract itself reflected that the agent was acting "on behalf of" a disclosed principal, see Fund McMgee Marine,  2004 WL 287663, at *2-3, or was identified in the contract as acting "as agent for" the principal, see Man Diesel A/S v. Seahawk N. Am., LLC , 2009 WL 3030220, at * 4 (S.D.N.Y. Sept. 22, 2009).  To the contrary, the bills of lading specifically make FIL liable for the payment of the freight charges based on its status as a consignee.  See Commercialisation Des Hydrocarbures, 585 F. Supp. at 62-63 (no agency defense where the "unambiguous terms of the contract" reflected that the purported agent was the buyer); see also CMA-CGM (Canada), Inc.,

---

[3] One exception to this ban on parol evidence occurs where the extrinsic evidence is "for the purpose of reforming the contract."  Restatement (Second) of Agency § 323(3)(a).  Such a reformation is possible where one party "knows not only that the writing does not accurately express the intention of the other party as to the terms to be embodied therein, but knows what that intention is." Id. § 505.  FIL has failed to present any non-conclusory evidence, however, that Nippon knew that the liability provision in the bills of  lading departed from the true intentions of the parties.

921 F. Supp. 2d at 6 ("[a]s a party bound by the terms and conditions of the Bills of Lading at issue in this matter, and the invoices generated with respect thereto, [defendant] is liable for payment to" plaintiff).

FIL points to the use of the words "DO NOT USE" next to the name "FIL Lines USA Inc." in the "Ship To" and "Customer" boxes on the invoices.  Def Mem. at 6; Invoices (annexed as Ex. E to Bertot Decl.).  In FIL's view, the words "DO NOT USE" mean that it was not intended to bear liability.  Def. Mem. at 6; Krishnan Decl. ¶ 13.  This argument fails for two reasons.  First, the invoices constitute extrinsic evidence that is not admissible in light of the lack of ambiguity in the bills of lading.  See Restatement (Second) of Contracts § 323(3); see also Investors Ins. Co. of Am. v. Dorinco Reinsurance Co., 917 F.2d 100, 104 (2d Cir. 1990) (extrinsic evidence may not be introduced to vary the "plain meaning" of a writing).  Second, this argument amounts simply to unsupported speculation about the meaning of terms in Nippon's invoices, and is thus insufficient to defeat summary judgment in Nippon's favor.  See Scotto, 143 F.3d at 114 ("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.") (citation omitted).[4]

In sum, FIL has not met its burden of proving that it was acting as an agent for a disclosed principal.  Thus, Nippon is entitled to summary judgment on its breach of contract claim.  FIL does not contest that the amount of money owed on the bills of lading totals

---

[4]We note that Ron Bertot, the director of finance for Nippon's U.S.-based general agent, states that "DO NOT USE Fil Lines USA" was entered in the computer system only "so that no further bookings showing the defendant as consignee would be accepted" because of their previous failure to pay ocean charges.  Bertot Reply Decl. ¶ 2(f).  Bertot points out that it "would make no sense to send defendant an invoices [sic] for charges it was not pay [sic]."  Id. ¶ 2(e) (second).  In light of FIL's failure to offer sufficient proof in support of its agency defense, it is not necessary to address its argument that Bertot is not competent to offer testimony on FIL's arrangements with Nippon.  Def. Mem. at 7.

$66,750.02.  See Pl. 56.1 Stat. ¶ 4; Def. 56.1 Stat. ¶ 4.  Accordingly, Nipon is entitled to

judgment for this amount.

      C.  Entry of Final Judgment under Fed. R. Civ. P. 54(b)

      Nippon seeks entry of a final judgment in its favor despite the pendency of FIL's third-

party complaint against LCL and India Freight.  While the entry of a final judgment in district

court is "generally appropriate only after all the claims have been adjudicated," Novick v. AXA

Network, LLC, 642 F.3d 304, 310 (2d Cir. 2011) (citation and internal quotation marks omitted),

Rule 54(b) of the Federal Rules of Civil Procedure contains an exception to this general

principle.  It provides that

> [w]hen an action presents more than one claim for relief — whether as a claim,
> counterclaim, crossclaim, or third-party claim — or when multiple parties are
> involved, the court may direct entry of a final judgment as to one or more, but
> fewer than all, claims or parties only if the court expressly determines that there is
> no just reason for delay.

Fed. R. Civ. P. 54(b).  Thus, to permit entry of a final judgment on fewer than all claims, three

elements are required:

> (1) [there must be] multiple claims or multiple parties . . . , (2) at least one claim,
> or the rights and liabilities of at least one party, must be finally decided within the
> meaning of 28 U.S.C. § 1291, and (3) the district court must make "an express
> determination that there is no just reason for delay" and expressly direct the clerk
> to enter judgment.

Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 16 (2d Cir. 1997) (citation

omitted) (emphasis omitted); accord Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 629

(2d Cir. 1991) (citation omitted).  A Rule 54(b) determination must "take account of both the

policy against piecemeal appeals and the equities between or among the parties."  Novick, 642

F.3d at 310.  Also, in deciding whether there is no just reason for delay, "a district court must

take into account judicial administrative interests as well as the equities involved."  Id. (citing

Curtiss-Wright Corp.v. Gen. Elec. Co., 446 U.S.1, 8 (1980)).

Entry of judgment under Rule 54(b) "should not be granted if the same or closely related issues remain to be litigated." Harriscom, 947 F.2d at 629 (citations and internal quotation marks omitted). "In a case involving multiple claims, the court should not enter final judgment dismissing a given claim unless that claim is separable from the claims that survive." Cullen v. Margiotta, 811 F.2d 698, 711 (2d Cir.), cert. denied, 483 U.S. 1021 (1987) (citing I.L.T.A. Inc. v. United Airlines, Inc., 739 F.2d 82, 84 (2d Cir. 1984)). A claim is "separable" if it involves "at least some different questions of fact and law and could be separately enforced." Avondale Indus. Inc. v. Travelers Indem. Co., 887 F.2d 1200, 1203 (2d Cir. 1989) (citing Cullen, 811 F.2d at 711).

In this case, Nippon's action against FIL is unrelated in all material respects to FIL's third-party complaint against LCL and India Freight. The resolution of Nippon's action against FIL turns exclusively on FIL's agency defense — that is, FIL's argument that it acted as an agent for a disclosed principle. By contrast, FIL's actions against LCL and India Freight are based on FIL's own contractual arrangements with LCL and India Freight. See Third Party Compl. ¶¶ 7-9. Thus, the issue of whether FIL has an agency defense to the bills of lading is not relevant to FIL's claims against LCL and India Freight, and cannot be expected to arise in that action. Additionally, because FIL could have brought its claims against LCL and India Freight in a separate action, its claims "could be separately enforced." Avondale Indus. Inc., 887 F.2d at 1203. Accordingly, in light of the lack of connection between these claims, the Court of Appeals would not be called upon to revisit the same issues of fact or law in the event that FIL appealed the judgment of liability against it and there was later an appeal of the judgment resolving the third-party action.

13

Finally, inasmuch as there is no evidence that the third-party complaint has even been served on India Freight and LCL, it would be unfair to Nippon to prevent it from enforcing its judgment while FIL's third-party action proceeds without any discernable urgency on FIL's part. See generally Petrello v. White, 2008 WL 5432230, at *5 (E.D.N.Y. Dec. 30, 2008) ("[p]laintiffs have an interest in a prompt enforceable judgment"). Moreover, there are serious concerns regarding FIL's solvency. Nippon has submitted evidence that FIL has had a number of checks returned for insufficient funds, see Bertot Reply Decl. ¶ 2.e; Scanned Check Images (affixed as Ex. H to Bertot Reply Decl.), and that FIL has conceded that it is unable to pay its bills, see Email from Ramesh Krishnan to Joseph De May, dated Oct. 3, 2012 (affixed as Ex. J to De May Reply Decl.). Any further delay will only increase the likelihood that any judgment will not be collectible. Accordingly, the Court finds that there is no just reason to delay entry of final judgment in favor of Nippon.

V.   CONCLUSION

For the reasons stated above, Nippon's motion for summary judgment (Docket # 12) is granted. The clerk shall enter a final judgment pursuant to Fed. R. Civ. P. 54(b) in favor of Nippon Yusen Kaisha, a.k.a. NYK Line, and against defendant FIL Lines USA Inc. in the amount of $66,750.02.

SO ORDERED.

Dated: October 18, 2013
        New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

14